334 So.2d 773 (1976)
Preston N. AUCOIN, Plaintiff-Appellee,
v.
Frank Cazan FONTENOT, Defendant-Appellant.
No. 5524.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1976.
*774 Jules Ashlock, Ville Platte, for defendant-appellant.
Gilbert Aucoin, Ville Platte, for plaintiffappellee.
Before CULPEPPER, GUIDRY and BERTRAND, JJ.
GUIDRY, Judge.
Preston Aucoin brings this suit for a dimunition in the purchase price of a building he bought from the defendant Frank Cazan Fontenot because of certain alleged defects.
Plaintiff bases his claim for dimunition on the premise that the slab piping in the building sold to him developed massive leaks to the end that all slab piping had to be abandoned; and, that defendant knew or should have known at the time of sale that galvanized pipes within a concrete massive leakage in the building, thereby rendering the building unsuited for plaintiff's purposes. Plaintiff further asserts that the defendant intentionally neglected to inform him of this nonapparent situation although he specifically inquired concerning the type of pipe incorporated in the slab. After a trial on the merits, judgment was rendered in favor of plaintiff in the amount of $4500.00. Plaintiff's claim for attorney's fees was denied. Defendant appeals from that judgment and plaintiff has answered the appeal asking that the trial court judgment be maintained, but praying that he be awarded reasonable attorney's fees.
Plaintiff's action was filed on January 14, 1974 praying for damages in the amount of $10,000.00 and for attorney's fees. Defendant excepted to plaintiff's petition alleging no cause or right of action and prescription. These exceptions were referred to the merits. The defendant then answered and reconvened against plaintiff asking that the sale of the building between plaintiff and defendant be rescinded; that the property be returned to defendant; and, that judgment be rendered in his favor for $42,000.00 as rental for the subject property from the date of sale to the recission of the contract, and for attorney's fees. Thereafter plaintiff, defendant in reconvention, filed an exception of no cause *775 or right of action, a rule for judgment on the pleadings, and a motion for summary judgment. The trial court denied the plaintiff's motion for summary judgment, and all other matters were referred to the merits.
The uncontroverted facts show that by credit sale dated February 20, 1967, Frank Cazan Fontenot sold to Preston Aucoin "a certain lot or parcel of ground, together with all buildings and improvements thereon and all fixtures furniture in said building known as the "Cazan Hotel". The sale of this building from defendant to plaintiff was made for $40,000.00 with $2500.00 being paid in cash and the balance to be paid in fifteen annual installments of $2500.00 each, plus interest.
Frank Cazan Fontenot had owned the building nearly twelve years when he sold it to the plaintiff, Preston Aucoin. During this period of ownership Mr. Fontenot made extensive changes in the building. In 1961 or 1962 defendant had substantial electrical and plumbing work performed, as well as, having the old wooden floor replaced with a concrete slab.
Shortly after the sale from defendant to plaintiff, around August of 1967, the latter also began remodeling the building. The building, which was a two story structure located near the courthouse in Ville Platte was restructured by plaintiff for use as his law office and also to provide other available rental space.
In August or September of 1973, some six years after plaintiff's purchase of the building, he noticed an extensive water leak coming from under the concrete slab floor. As a consequence of the leak plaintiff filed this suit against defendant, vendor, for a diminution of the purchase price of the building.
The defendant contends that the trial court erred in failing to sustain his peremptory exceptions of no cause or right of action and prescription because the leak which plaintiff alleges developed in his building happened 6½ years after the purchase thereof and is not a redhibitory defect as contemplated by LSA-R.C.C. Article 2520. Defendant further contends that the leak did not render the building "absolutely useless" and that an inspection of the building would have revealed to plaintiff the type of pipe used in the building's plumbing. In support of his position defendant avers that at the time he remodeled the building in 1961 or 1962 all of the plumbing work was done under the supervision of the Plumbing Inspector of the City of Ville Platte; that the plumbing work met the requirements of the City Plumbing Code; and, that defendant did not have any knowledge of any redhibitory vices which he failed to reveal at the time of sale.
The testimony of the defendant, Frank Cazan Fontenot, indicates that he was aware that galvanized iron water pipes were located beneath the floor of the building, and that these pipes were not replaced during the remodeling, but rather more galvanized pipes were added. He testified however, that he was under the impression that this plumbing was in accordance with the City Plumbing Code, and no mention of any possible difficulty with these pipes was conveyed to him either by the City Inspector or his plumbing contractor. Defendant further testified that at the time of the sale of this building he was never asked by plaintiff if the water pipes under the building were of copper or galvanized iron, nor did he ever tell plaintiff that the slab piping was copper.
Sammy Guidry, former plumbing inspector for the City of Ville Platte was called as an expert in the field of plumbing. The testimony of this eighty-four year old gentleman did not establish that the plumbing installed in defendant's building was in accordance with City requirements. He stated that his inspection of the building in 1961 or 1962 was only relative to the drain pipes in the structure. He testified that *776 while he was City inspector it was required that copper pipes be used in or under concrete slabs.
Plaintiff's testimony related that during the pendency of negotiations for his purchase of the building he contacted Ray Verrette, operator of the Verrette Building Contracting & Lumber Yard, Inc., and asked him if he would examine the structure to determine if it were suitable for remodeling into law offices. Ray Verrette's testimony confirmed plaintiff's actions. Ray Verrette stated he told plaintiff at this time to inquire of defendant whether the slab water pipe plumbing was copper or not, informing plaintiff that if the pipes were not of copper he would be hesitant about performing extensive remodeling due to the possible deterioration of the iron pipes from contact with concrete. Plaintiff, as a consequence of this inquiry by the contractor, testified that he contacted defendant and asked him if the slab piping was copper. According to plaintiff's testimony defendant assured him that all the water piping was copper. Plaintiff, having been assured that the pipes incorporated in and beneath the concrete slab were copper he purchased the said building from the defendant and began his proposed renovation. The record reveals that it was not until August of 1973, some six years after the sale, that plaintiff noticed a water leak from the north side of his building. Plaintiff's testimony indicated that the floor of the building stayed continually moist. The leak was further evidenced by a marked increase in the plaintiff's water bill. Upon discovery of this leak the plaintiff called in Edwin "Chuck" Smith, a plumber who had done work previously on the building for the defendant.
Edwin Smith stated that he had worked on the renovation of this structure in 1961 or 1962 and knew from that prior experience that the slab pipes were of galvanized iron. Mr. Smith, who testified as an expert in the field of plumbing, corroborated the testimony of Sammy Guidry that the placing of galvanized iron pipe within or below a concrete slab would cause such pipe to erode and break. Mr. Smith's testimony indicated that after inspection of the building he determined there was an extensive water leak beneath the concrete slab, although he was not able to actually see the leak or the break in the pipe. Mr. Smith further stated that during an attempt to repair the plumbing he broke into the concrete slab whereupon he observed the presence of galvanized pipe incorporated therein. In conclusion Mr. Smith stated that it would cost approximately $4500.00 to repair the plumbing in the building. Such repairs would require the use of some exposed piping inside to completely eliminate reliance on the slab piping.
The trial court rejected defendant's claim that he was not aware of any defect in the building. The trial court, citing Rodriguez v. Hudson, 79 So.2d 578 (La.App.1956), Guillory v. Sarpy, 177 So. 2d 403 (La.App.1965), found that non-copper pipe in a concrete slab is a serious defect and one that is contemplated by LSAR.C.C. Article 2520. The trial court further found that galvanized pipe embedded in a concrete floor is not an "apparent" defect nor a defect that can be discovered by a simple inspection. Finally, the trial court concluded that defendant knew that the slab plumbing was not copper and that he nevertheless assured plaintiff that they were copper.
We cannot conclude that the trial court committed manifest error in reaching these factual conclusions. Our independent examination of the record reveals ample evidence which upon its reasonable evaluation as to credibility furnished a reasonable factual basis for the trial court's findings. Canter v. Koehring Company, 283 So.2d 716, 724 (La.Sup.Ct.1973).
Based upon the trial court's factual findings which we do not disturb, we like the trial court determine that the building sold by defendant to plaintiff contained a serious vice or defect; that defendant was *777 aware of such a defect and neglected to declare it to the plaintiff even after inquiry; that plaintiff did not become aware of such defect until August or September of 1973; and, therefore that plaintiff's action was timely filed (LSA-R.C.C. 2534). Additionally, based upon these factual findings we discern no error in the trial court's determination that plaintiff is entitled to a diminution in the purchase price. LSA-R.C.C. Articles 2541 and 2542.
We find no merit in the defendant's contention that the nature of the plumbing was certainly known or should have been known to plaintiff and his contractor when they renovated the building in 1967. The testimony did show that the contractor performed some plumbing work in 1967, however this work was limited to the installation of a new bathroom and a relocation of some piping so that a new stairway could be added. Considering that all of this work was done on piping located within the building, and no work was performed on the plumbing beneath the building the trial court could reasonably conclude that the existence of galvanized piping below the slab flooring did not become known to the plaintiff during the renovation.
Defendant filed a reconventional demand against plaintiff seeking a recission of the sale on the ground of redhibition, asking that the parties be restored to the status quo. The defendant further avers that this sale should be vitiated and annulled for lack of consent because of the failure of the principal motive and error as to the thing. LSA-R.C.C. 1797 and 1819.
The right to rescind a sale for a redhibitory defect is personal to the buyer. LSA-R.C.C. Article 2520. The trial court correctly denied the defendant seller's claim in redhibition. Likewise the defendant's assertion that the sale of the building should be vitiated and annulled for lack of consent because of failure of the principal motive and error as to the thing is without merit. Considering the trial court's determination that the defendant was aware of the defect in the building and neglected to declare the same to plaintiff and that defendant in fact told plaintiff that the building possessed a quality which it did not have, we cannot now allow the defendant by virtue of his own misrepresentations to annul the contract for lack of consent on the part of the plaintiff.
Finally, the defendant contends that the trial court erred in not non-suiting the plaintiff for failure to establish with exactness the amount it would cost to make the needed repair to the building. The testimony of Edwin Smith, a plumber accepted by the Court as an expert, establishes that the needed repairs will require an expenditure of $4500.00. We conclude, as did the trial court, that this testimony is sufficient to establish the amount of the diminution of the price to which plaintiff is entitled.
The plaintiff answers the appeal asking for an award of attorney's fees based upon LSA-R.C.C. 2545 which provides:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages." (Emphasis ours)
The trial court specifically found that the defendant not only knew of the defects and vices in the building he sold, but additionally failed to declare the same to plaintiff even after an inquiry by plaintiff. Accordingly the trial court erred in failing to award to the plaintiff reasonable attorney's fees. We are of the opinion that an award of attorney's fees in the amount of $750.00 is reasonable. Ford v. Broussard, 248 So.2d 629 (La.App. 3rd Cir. 1971).
For the foregoing reasons the judgment appealed from is affirmed, but amended so as to award plaintiff the additional amount of $750.00 in attorney's fees. Appellant is cast for all costs.
AFFIRMED AND AMENDED.