527 So.2d 495 (1988)
Marilyn Panger CORY, wife of/and Paul Cory
v.
Hazel CARONA.
No. 87-CA-693.
Court of Appeal of Louisiana, Fifth Circuit.
June 7, 1988.
Rehearing Denied July 15, 1988.
Steven E. Hayes, William C. Harrison, Jr., Gauthier, Murphy, Sherman, McCabe, Chehardy & Ellis, Metairie for defendant-appellant.
Ernest E. Barrow, II, Grant & Barrow, Gretna for plaintiff-appellee.
Before GRISBAUM, DUFRESNE, and GOTHARD, JJ.
GRISBAUM, Judge.
This is a suit in redhibition wherein the trial court, in a bench trial, set aside the sale of a home. We affirm.
ISSUES
The key issues are whether the foundation failure existed at the time of the sale and whether it was discoverable by simple inspection.
FACTS
On May 24, 1970, Hazel Carona, the defendant, purchased a house at 10117 Hyde Place, River Ridge, Louisiana. She lived there until May of 1984 and then sold it to Dr. Marilyn Panger Cory and her husband, Paul Cory.
On his first evening in the house, or the following morning, Paul Cory noticed the bathroom floor adjoining the master bedroom was sloping. He did not notice the slope before the sale. Mr. Cory attempted to measure the slope with a four foot level. He stated that the slope was visible to the naked eye, saying, "The angle was present at the time, yes. There was nothing concealing it." This bathroom was not carpeted. Upon taking her first bath in her new home, Dr. Cory noticed that the tub leans to the left. Both Mr. and Dr. Cory noticed that the door leading into the master bedroom would not stay open unless it was propped against the knob on the closet door, or propped open with a shoe, due to the slant of the house. Other doors also swung open for that reason.
*496 Neither one of the Corys noticed this problem with the doors during any of their visits to the house before the sale. However, Mr. Cory stated that he noticed hairline cracks in the master bathroom floor tile on one of the presale visits. When asked whether that observation caused any complications, he stated, "Well, I really thought it was a problem, just normal settling tiles don't do that."
Both of the Corys testified that, if they had known the foundation was cracked before the sale, they would not have purchased the house. Mr. Cory stated that neither Mrs. Carona nor anyone connected with the sale advised him that the house had any structural defects. Dr. Cory testified that she was not told by anyone about any defects or problems in the structure. Before the sale, she specifically asked Mrs. Carona if there was anything the Corys should know about the house; Mrs. Carona said, "No." Theresa Messina, the real estate agent who represented the Corys for the sale, corroborated this, as did Hazel Carona in her deposition taken February 5, 1986.
Hazel Carona testified that she didn't notice any cracks in the master bedroom bathroom until she dropped a jacuzzi machine on the floor. She thought that was the cause for the cracks she saw. Although she stored luggage and other miscellaneous items in the attic, she didn't put things up there herself; she had others do it for her for the three years preceding the sale. Therefore, she was unaware that the attic ceiling beams running east-to-west were pulling away from the beams running north-to-south; at the time of trial, there was a one-inch gap between them. Hazel Carona did not notice the problem with the doors, either. She kept the doors open at all times to improve ventilation and to listen for her father, who was in poor health and who lived with her. She claims she tried to be as honest as possible about everything she could, "[o]r everything they asked me." She stated she did not know, at any time, of any sinking or cracking in the slab prior to the act of sale.
Theresa Messina worked as a real estate agent for three years, and in her representation of the Corys, she showed the house to them several times. She stated she did not notice anything about the home during her tours that would cause her to question its integrity. She remembers showing the house to the Corys at least twice and remembers she did not go into a detailed inspection of the house. She then reiterated on cross that "there did not seem to be any problems just by looking at it [the house]."
Rose Fogarty, a real estate agent for eight years, was a realtor associate with Larry Truck Real Estate. As the listing agent for the house, she gave Mrs. Carona's house a "visible inspection" and noticed nothing unusual.
Thomas C. Ranlett appraised the house for Fidelity Homestead. He inspected and appraised the interior and the exterior of the house, and did not notice anything wrong or defective with the house. "Other than normal physical depreciation ...," he stated, "the structure was sound." This appraisal and inspection took place shortly before the sale and financing of the house. Also, two engineers testified, one representing the plaintiff and the other representing the defendant; both agreed that the foundation had failed and differed only on the cause of the failure.
LAW
The Civil Code articles governing an action in redhibition include the following:
Art. 2520. Redhibition, definition

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
Art. 2521. Apparent defects discoverable by buyer
Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.
Our jurisprudence makes it clear that the trial court's determination of *497 whether or not a vice is latent or apparent upon simple inspection is a factual determination which will not be disturbed by the appellate court unless it is manifestly erroneous. See Voorhies v. Livingston, 420 So.2d 1206, 1209 (La.App. 3d Cir.1982), citing Prat v. Heymann, 410 So.2d 343 (La. App. 4th Cir.1982) and Aucoin v. Fontenot, 334 So.2d 773 (La.App. 3d Cir.1976); Anselmo v. Crysler Corp., 414 So.2d 872, 875 (La.App. 4th Cir.1982), citing Clinkscales v. Superior Pontiac-GMC, Inc., 365 So.2d 895 (La.App. 4th Cir.1978).
ANALYSIS
We note the trial court, in its Reasons for Judgment, states:
The Court finds in accordance with La. Civil Code Articles 2520, et seq[.], that the plaintiffs herein, [sic] carried the burden of proof by proving a hidden defect that was present at the time of the sale but not discoverable by a reasonable inspection at the time of the sale. It also finds that the Corys should have been made aware of this defect, had it been in the knowledge of the seller at the time of the act of sale. The Court finds that[,] although the defect was one that should have been fairly obvious to one living in the home, ... it was in fact a hidden defect and, the Court finds no bad faith which can be imputed to the defendant in this matter. The defendant, Hazel Corona [i.e., Carona], has testified and this Court finds that she was unaware of the problems with the house at the time of the sale and therefore did not know to advise the plaintiff of the defect because she had no knowledge of it. The Court is convinced that this testimony is correct and[,] based upon this conclusion[,] there should be no award of attorney's fees in this case.
The trial court, in its Reasons for Judgment, further states that "It might be added here that neither did two professional real estate agents or the mortgagee's appraiser discover the defect prior to the sale." We agree.
After a careful review of the record, bearing in mind our statutory law and our jurisprudential guidelines, we cannot say the findings of fact the trial court relied upon to rescind the sale are not supported by the record nor can we say he was "clearly wrong." The key fact which is not controverted and which is dispositive is that the seller who lived in the home for 14 years did not have knowledge of the fatal defect; ergo, how can we place the mantle of simple inspection upon this purchaser? See Estopinal v. Bourshie, 420 So.2d 749, 751 (La.App. 4th Cir.1982) and Sharp v. Bozzelle, 420 So.2d 1039 (La.App. 5th Cir. 1982).
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.
DUFRESNE, J., dissents with written reasons.
DUFRESNE, Judge, dissents with written reasons.
I respectfully dissent, since I do not hold that the residence contained a latent defect. The testimony of Mr. Cory clearly shows that he thought there was a problem with the settling of the slab before the purchase. I find the defect was readily discoverable by simple inspection and that the action in redhibition is not well founded.
Therefore, since the Corys as buyers failed to further investigate the partially apparent defect, when they admittedly thought there was a problem before the sale, this constituted a waiver of their right to bring an action in redhibition.
Accordingly, I would reverse the judgment of the trial court and respectfully dissent from the majority opinion herein.