MOORE, J.
| ¶ Michael and Rachel Sitter, the buyers of a house in Bossier City, appeal a summary judgment dismissing their redhibition claims against Michael and Jackie Warner, the sellers, and Shirley Davis and ERA World Real Estate, the sellers’ real estate agent. Finding no genuine issue of material fact and, on this record, a sufficient disclosure of the condition of the property, we affirm.

Factual Background

The house was built in 1996 on Lot 2, Brookhaven Estates Unit 2, a lot that backs onto the Flat River in north Bossier City; the Warners purchased it from the builder, Buddy Collins. In July 2000, the Warners listed it for sale with Shirley Davis, an agent with ERA World Real Estate. Ms. Warner filled out a standard “Seller’s Property Condition Statement.” In response to the question, “To your knowledge, are there any defects or problems with: * * * 3. Foundation (Pier/ Slab),” she checked “unknown.” Under “Explanations,” she handwrote: “Having Builder Buddy Collins looking at crack on outer brick — 10 year warranty on house foundation.”
In late July 2000, Collins hired Interstate Foundation Co. to inspect the house; Interstate’s report is not in the record. The following month, however, Collins hired a contractor, PPT Inc., to do $1,300 of work, including inserting piers and wedges to shore up the foundation. Shortly after this, Collins hired a civil engineer, Gordon Russell, to inspect the work. Russell’s report, dated October 26, 2000, stat *1260 ed, “The placement of these piers has closed the cracks. This has repaired the existing problem.” The report also noted, however, that the rear of the house was on fill | ¡¡material which has settled about one inch, leaving a 1/2-inch opening in the brick veneer; he recommended adding piers to this portion of the house.
Meanwhile, the Sitters were negotiating (through their own agent, Mary Stokes) to buy the house. On October 17, 2000, they submitted a written offer of $108,000, which the Warners accepted; on October 28, 2000 (two days after Russell wrote his engineer’s report), the Sitters signed the Warners’ property condition statement. The parties closed the sale on October 30. According to the Sitters, aside from the property condition statement, there was no further disclosure of the foundation issues: neither the Warners nor Ms. Davis ever mentioned the report from Interstate Foundation, the work by PPT, or the inspection by Russell.
According to their petition, the Sitters moved into the house unaware of any problems. In June 2001, however, they discovered in the back yard a hole which seemed to run up to the base of the house. They called Interstate Foundation, who informed Mrs. Sitter that they had already inspected the house about one year earlier. On August 1, they advised the Sitters the foundation “appears to be in basically the same condition now as it was one year ago. Because of this, it is doubtful anyone did any foundation work before you bought the house.” Interstate’s report noted separations ranging from 1/8 — 1/4 inch in the brick and fascia, as well as a “big void” in the foundation, and proposed repairs costing $3,955.00.
The Sitters filed the instant suit in November 2001 to rescind the sale or, alternatively, reduce the purchase price. They named as defendants Michael and Jackie Warner, the sellers; Ms. Davis and ERA World Real ^Estate, the seller’s agents; and the Board of Commissioners of the Bossier Levee District. They alleged that the Warners and Ms. Davis failed to disclose the true nature and extent of the defects in the foundation, or that the Board of Commissioners had been conducting soil tests in the area for years. The claim against the Board was that it failed to advise prospective buyers of the seriously unstable soil along the Flat River.
The Warners filed incidental claims against Ms. Davis and ERA, as well as against Buddy Collins, the builder. The Warners claimed, in essence, that they fully disclosed the whole situation to Ms. Davis, but she must have neglected to pass along this information to the buyers.

Summary Judgment Evidence and Action of Trial Court

The Warners filed a motion for summary judgment. They admitted that they noticed a crack in the house in July 2000, but asserted that they notified their real estate agent, Ms. Davis, who in turn called the builder, Collins; as far as they knew, PPT had fixed the problem. They also argued that the property condition statement was sufficient to place any reasonable buyer on notice of a potential problem. In support, they attached a copy of the property condition statement, together with portions of their own and of Ms. Davis’s depositions.
Ms. Davis and ERA also filed a motion for summary judgment, raising similar contentions. They asserted that the Sitters could not prove they failed to disclose any known defect. In support, they attached copies of the property condition statement and the buy-sell agreement, as well as portions of the depositions given by the Sitters, the Warners and Ms. Davis.
*1261 [4The Sitters opposed the motions, arguing that when they signed the property condition statement, Ms. Davis failed to disclose that PPT had performed substantial repairs to the foundation or that an engineer had inspected it. The Sitters made the same claims against the War-ners, adding that they failed to disclose a neighborhood meeting held in October 2000, in which members of the Board advised property owners of “suspected foundation failures occurring in the vicinity of Flat River.” In support, they attached copies of PPT’s invoice, the engineer’s report, Interstate’s repair proposal, a letter from the president of the Board, and a portion of Buddy Collins’s deposition.
After a brief hearing, the district court stated that the Warners and Ms. Davis both disclosed the condition of the property to the Sitters. He rendered summary judgment in favor of those defendants and designated it an appealable partial final judgment.

The Parties’ Contentions

The Sitters have appealed, urging by two assignments of error that the district court erred in granting both motions for summary judgment. In general, they assert that despite the new favored status of summary judgments, factual inferences must be drawn against granting the motion and all doubt resolved in the opponent’s favor. Row v. Pierremont Plaza LLC, 35,796 (La.App. 2 Cir. 4/3/02), 814 So.2d 124, writ denied, 2002-1262 (La.8/30/02), 823 So.2d 952. They concede the property condition statement noted “crack on outer brick,” but contend this came nowhere near disclosing the true condition of the house. They specifically argue that Interstate’s July |B2000 inspection, PPT’s September 2000 foundation repair work, Russell’s October 2000 report, and the Board’s October 2000 letter, were all significant facts bearing on a latent defect that should have been disclosed. They also contend that by the cross-claim, the Warners accused Ms. Davis of failing to disclose material information. They submit that this alone created a genuine issue of material fact as to how much the Warners and Ms. Davis knew before selling the house.
The Warners contend summary judgment was proper because the property condition statement was sufficient to place the Sitters on notice of defects in the foundation; the Warners provided all relevant information to Ms. Davis and were entitled to rely on her to convey this to the buyers, Armstrong v. Wolf, 583 So.2d 580 (La.App. 3 Cir.1991); they themselves (the Warners) made no direct representations to the Sitters; and the defect was partially apparent, with cracks in the brick siding and holes in the yard, and sufficient to place a reasonable buyer on notice of some defect, Pickerel v. Long, 286 So.2d 430 (La.App. 2 Cir.1973).
Ms. Davis and ERA contend that they disclosed to the Sitters’ agent, Ms. Stokes, that repairs had been performed to correct the crack noted on the property condition statement. They quote the portion of the engineer’s report that says, “The placement of the piers has closed the cracks. This has repaired the existing problem.” They also cite the Sitters’ deposition, in which they admitted reading the property condition statement but electing not to have the house independently inspected, as this was “not necessary.” They reiterate that to the best of their knowledge, the defect had been ^repaired. Finally, they contend that the Sitters offered no evidence that Ms. Davis had any knowledge of the Board’s activities in Brookhaven Estates. They suggest that any breakdown in communications was between the Sitters and their own agent, Ms. Stokes.

*1262
Applicable Law

The motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Wells v. Red River Parish Police Jury, 39,445 (La.App. 2 Cir. 3/2/05), 895 So.2d 676, writ not cons., 2005-0854 (La.5/13/05), 903 So.2d 438. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Racine v. Moon’s Towing, 2001-2837 (La.5/14/02), 817 So.2d 21. The motion shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B; Racine v. Moon’s Towing, supra.
On the motion for summary judgment, the burden of proof is on the mover; however, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then the mover may merely point out to the court the absence of factual support for one or more elements essential to the plaintiffs claim. The burden then shifts to the plaintiff to present evidence demonstrating that genuine issues |7of material fact remain. La. C.C.P. art. 966 C(2); Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Wells v. Red River Parish Police Jury, supra. If the plaintiff fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary judgment. La. C.C.P. art. 966 C(2); Power Marketing Direct Inc. v. Foster, 2005-2023 (La.9/6/06), 938 So.2d 662.
Appellate review of the grant or denial of summary judgment is de novo. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002; Wells v. Red River Parish Police Jury, supra.
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless or its use so inconvenient and imperfect that had he known of the vice, the buyer would not have purchased it. La. C.C. art. 2520. The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer, of such things. La. C.C. art. 2521; Duplechin v. Adams, 95-0480 (La.App. 1 Cir. 11/9/95), 665 So.2d 80, writ denied, 95-2918 (La.2/26/96), 666 So.2d 1104. A realtor or broker has a duty to disclose to purchasers any defect of which she has knowledge. Nesbitt v. Dunn, 28,240 (La.App. 2 Cir. 4/3/96), 672 So.2d 226, and citations therein.

Discussion

The crux of the case is the sufficiency of notice under Art. 2521. On July 13, the Warners executed (with assistance from Ms. Davis) the property condition statement, noting the condition of the foundation was “unknown,” | ¡/‘having builder Buddy Collins looking at crack on outer brick.” Many things happened after this: Interstate Foundation inspected the house, PPT repaired the foundation at a cost of $1,300, an engineer inspected the work and issued a report. The Warners and Ms. Davis were fully aware of these events but never updated the property condition statement to reflect them. The Sitters correctly argue that the subsequent events are highly relevant to the decision to buy the house. The failure to disclose them, standing alone, may have been a breach of *1263 the duty to disclose latent defects of which the sellers had knowledge.
In support of the motions for summary judgment, however, the defendants offered several depositions which showed verbal disclosure. Because the Sitters were working through a buyer’s agent, Ms. Stokes, neither the Warners nor Ms. Davis had any direct contact with them. Ms. Warner testified that she was fully aware of the cracked slab and that PPT performed the work in mid-August; she told Ms. Davis when the repairs were completed. Ms. Davis testified that she relayed this information to Ms. Stokes: “I told her what had happened and what had been done, and she [Ms. Stokes] said, that’s okay.” She later clarified:
I told her [Ms. Stokes] — she had asked me about the crack. I told her what had been done, that we had contacted Buddy, and that he had sent men out to repair it. And that he had assured me that it was all fixed and that he would send me the engineer’s report and any paperwork that he had. * * * She said, that’s fine.
Mr. Sitter testified that he discussed the property condition statement with Ms. Stokes; when he asked her about the foundation, she “told us that Buddy had looked at the problem and everything was okay.”
| flThis testimony easily shows that the Sitters’ agent, and the Sitters themselves, received information that supplemented the property condition statement and sufficiently advised of the defect and repairs under Art. 2521. With this showing, the burden shifted to the Sitters to offer some evidence demonstrating a genuine issue of material fact. La. C.C.P. art. 966 C(2). On de novo review, we find the Sitters failed to make this showing. They filed copies of the documents mentioned above, but these simply do not address, and certainly do not refute, the showing that Ms. Davis made a verbal disclosure to Ms. Stokes, or the content of that disclosure. In short, there is no genuine issue of material fact.
We also note that the content of the verbal disclosure was sufficient. In some circumstances, a cracked foundation may be truly hidden, creating liability for the seller. Nesbitt v. Dunn, supra; Collins v. Curtis, 97-2348 (La.App. 4 Cir. 9/30/98), 719 So.2d 679, writ denied, 98-2755 (La.12/18/98), 734 So.2d 641. However, a crack or separation in the outer brick is readily apparent to the buyer, satisfying Art. 2521. Pickerel v. Long, supra; Duplechin v. Adams, supra. The summary judgment evidence shows that the cracked bricks and holes in the yard were apparent. On this record, Ms. Davis’s verbal notice to Ms. Stokes was sufficient, as a matter of law, to advise the Sitters of the defect.
Finally, there is nothing to indicate that the Warners or Ms. Davis had any knowledge of the Board’s operations in Brookha-ven Estates. The letter from the Board’s president, Mr. Larkin, stated that subdivision residents had contacted the Board about suspected foundation failures and the Board had |inmet with “some of the homeowners”; this does not show that the Warners were in any way involved. Notably, Ms. Warner testified that she had no knowledge that any entity was testing the soil or that other houses in the area had foundation problems. The district court did not err in granting the motions for summary judgment.

Conclusion

For the reasons expressed, we find no genuine issue of material fact that the defendants provided a sufficient disclosure of the condition of the property, and that they are entitled to judgment as a matter of law. The judgment is affirmed. Costs *1264 are to be paid by the plaintiffs, Michael and Rachel Sitter.
AFFIRMED.
BROWN, C.J., dissents with written reasons.